**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SLEP-TONE ENTERTAINMENT CORPORATION, | ) ) | |
| | ) | Case Number: 1:13-cv-8526 |
| Plaintiff, | ) | |
| v. | ) | Judge James B. Zagel |
| | ) | |
| AMERICA'S BAR & GRILL, LLC and RICHARD GARCIA, | ) ) | Magistrate Judge Maria Valdez |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Ignoring the clichéd advice that one should not bring a knife to a gun fight, Plaintiff Slep-Tone Entertainment Corporation ("Slep-Tone") has brought trademark law claims to a copyright fight. Slep-Tone accuses Defendants America's Bar & Grill, LLC and its principal Richard Garcia ("Defendants") of improperly obtaining and publically playing so-called "media-shifted copies" of certain karaoke accompaniment tracks which Slep-Tone originally produced and sold. Instead of making the copyright infringement claim that such alleged facts immediately suggest, however, Slep-Tone has attempted to state only trademark infringement and unfair competition claims, based on the alleged display of Slep-Tone's claimed trademarks and trade dress within the accompaniment tracks themselves.

Under the presently alleged factual pattern, Slep-Tone's trademark law claims fare no better than would our hypothetical outgunned knife-wielder. There are at least two independent grounds why both of Slep-Tone's claims should be dismissed for failure to state a claim under Fed. R. Civ. Pro. 12(b)(6). First, because Slep-Tone's asserted marks and trade dress are inherent, indivisible parts of its copyrightable karaoke tracks, allowing these trademark

infringement and unfair competition claims to proceed would create a type of "mutant" or

perpetual copyright which courts have found to be improper.  Second, Defendants' use and

display of "media-shifted" karaoke tracks originally produced and sold by Slep-Tone are

protected from trademark infringement and unfair competition claims by the trademark first sale

doctrine.

<u>Argument</u>

**I.      Relevant Legal Standards**

In general, a motion to dismiss pursuant to Rule 12(b)(6) "challenges the sufficiency of

the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order*

*of Police of Chicago Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009).  "In ruling on Rule 12(b)(6)

motions, the court must treat all well-pleaded allegations as true and draw all inferences in favor

of the non-moving party."  *In re MarchFirst, Inc.*, 589 F.3d 901, 904 (7th Cir. 2009).  However, a

court need not accept as true any legal conclusions in a complaint.  *Ashcroft v. Iqbal*, 556 U.S.

662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  Therefore, "a court considering a motion to

dismiss can choose to begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth."  *Id*. at 556 U.S. 679.

There are at least two completely separate ways for a complaint to fail to state a claim.

The complaint can either fail to plead enough facts, thereby failing to give fair notice of the

claim or plausibly suggest a right to relief, or it can plead too many facts, thereby pleading the

plaintiff right out of court by establishing a complete defense to its claims. *Tamayo v.*

*Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).  Here, Slep-Tone's complaint fails under the

"too many" facts prong, as it asserts facts which establish at least two independent and complete

defenses to its trademark infringement and unfair competition claims.

## II.    Slep-Tone's Claims Fail Because They Impermissibly Assert Infringement of Marks Which Are Inherent Parts of Copyrightable Works.

The Supreme Court has recognized that trademark, copyright, and patent laws create very different types of rights, and that courts must guard against attempts to use one set of laws (such as trademark) to alter the balance of interests established by another (such as copyright).  In *Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003), a video production company re-packaged and sold as its own a pre-existing historical documentary, the copyright of which had expired.  The court rejected the attempt by the documentary's original producer to use the Lanham Act to shut down sales of the repackaged version, in large part because "in construing the Lanham Act, we have been 'careful to caution against misuse or over-extension' of trademark and related protections into areas traditionally occupied by patent or copyright."  *Id*. at 539 U.S. 34 (quoting *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001)).  It would have been a misuse of the Lanham Act to do as the documentary's original producer wanted, because that application would have "create[d] a species of mutant copyright law," *Dastar* at 539 U.S. 34, which would circumvent the balance of public and private rights set out by the Copyright Act.

The subsequent case of *Zuffa, LLC v. Justin.tv, Inc.*, 838 F.Supp.2d 1102 (D. Nev. 2012), demonstrates how the principles set out in *Dastar* apply to the fact pattern in the present case.  In *Zuffa*, the organizer of mixed martial arts bouts broadcast on pay-per-view television made copyright infringement, trademark infringement, and other claims against the operator of a web site through which users could upload and share video streams.  These claims were based on users of the Justin.tv web site uploading and sharing a single mixed martial arts bout produced by Zuffa.  *Id*. at 1103. In addition to infringement of the copyright Zuffa claimed in the broadcast, Zuffa claimed infringement of certain alleged trademarks visible in the video stream,

including the allegedly distinctive eight-sided ring where Zuffa's "Ultimate Fighting Championship" bouts take place. *Id.*

On a motion to dismiss, the *Zuffa* court held that Zuffa could not maintain trademark infringement claims based on alleged marks which were an inherent part of the disputed video:

> Essentially, if Zuffa were allowed to proceed on a trademark claim for the display of the Octagon ring, or other trademarks inherently part of the copyrighted broadcast, Zuffa would possess a mutant-copyright or perpetual copyright because nobody would ever be able to copy the video and display it regardless of whether the copyright had entered the public domain. This is the exact situation the Supreme Court disallowed in *Dastar*.

*Id.* at 1106. As a result, the court limited "Zuffa's trademark claims only to the display of Zuffa's trademarks which are not an inherent part of the video broadcast." *Id.*

In the present case, Slep-Tone's Lanham Act claims must be dismissed because they are premised on infringement of marks which are inherent parts of Slep-Tone's "karaoke accompaniment tracks." These accompaniment tracks are, for all practical purposes, video files. They have a changing visual element showing song lyrics, synchronized to an audio element with background music for those specific lyrics. In the words of Slep-Tone's complaint, these tracks allow for "synchronized playback of audio and video suitable for prompting singers with lyrics cues." Complaint ¶ 12. As such, Slep-Tone's karaoke tracks are copyrightable as audiovisual works under the Copyright Act (*see* 17 U.S.C. 101 and 102(a)(6)), regardless of whether Slep-Tone has chosen to assert those copyrights in the present complaint.

Slep-Tone's Lanham Act claims allege unauthorized display of two categories of allegedly distinctive elements, both of which are inherent parts of its karaoke tracks. Slep-Tone labels the first category the "Sound Choice Marks," consisting of the word mark SOUND CHOICE and a design mark incorporating this same phrase. *See* Complaint ¶¶ 28-32. According to Slep-Tone's own allegations, these Sound Choice Marks are an inherent part of its

karaoke tracks:  "When played as intended using appropriate software, those files cause the Sound Choice Marks and the Trade Dress to be displayed as part of the associated video component of the karaoke tracks they represent."  Complaint ¶ 48.  In other words, simply playing one of Slep-Tone's karaoke tracks causes the Sound Choice Marks (presumably the design mark, which incorporates the word mark) to be displayed on the relevant output screen. The Sound Choice Marks were "baked in" to the content of the karaoke tracks when Slep-Tone created those tracks, and there is no way to play or use the disputed karaoke tracks without displaying those Marks.

The second category of Slep-Tone's allegedly distinctive elements is a purported "Trade Dress," consisting of "(a) the use of a particular typeface, style, and visual arrangement in displaying the lyrics; (b) the Sound Choice Marks; and (c) the use of particular styles in displaying entry cues for singers, namely a series of vanishing rectangles to indicate the cue." Complaint ¶ 34.  Assuming that this alleged Trade Dress can actually function as a source indicator, it would be equally if not more inherently intertwined with the karaoke tracks as are the Sound Choice Marks.  Not only does Slep-Tone explicitly allege that this purported Trade Dress is displayed as part of the video portion of each track (*see* Complaint ¶ 48), but the nature of this Trade Dress (relating to the visual characteristics of the displayed lyrics and how musical timing cues are given) means that it would simply not be possible to use the karaoke tracks for their intended purpose without displaying these alleged Trade Dress elements.  As such, Slep-Tone's alleged Trade Dress is an inherent part of its karaoke tracks.

For the same reasons articulated by the *Zuffa* court, this Court should dismiss Slep-Tone's trademark infringement and unfair competition claims.  The alleged trademark and trade dress rights forming the basis for these claims stem solely from the Sound Choice Marks and the

Trade Dress (*see* Complaint ¶¶ 63-66 and 70-72), both of which are inherent parts of Slep-Tone's copyrightable karaoke tracks. As such, allowing Slep-Tone to block other parties from using or selling those tracks on trademark infringement or unfair competition grounds would create the exact type of impermissible "mutant-copyright or perpetual copyright" that the *Zuffa* court identified. The Lanham Act should not be used for such purposes, meaning that both of Slep-Tone's claims for relief should be dismissed.

### III. Slep-Tone's Claims Should Be Dismissed Because Defendants' Activities Are Protected Under the Trademark First Sale Doctrine.

The trademark first sale doctrine provides a separate and independent ground for dismissing Slep-Tone's trademark infringement and unfair competition claims. This doctrine places limitations on the control a producer has over its trademarked products after the producer places them into the stream of commerce. "Under the first sale doctrine, resale by the first purchaser of the original article under the producer's trademark is generally neither trademark infringement nor unfair competition*." SoftMan Products Co. v. Adobe Systems, Inc*., 171 F.Supp.2d 1075, 1092 (C.D. Cal. 2001). "The rationale behind the rule is that 'trademark law is designed to prevent sellers from confusing or deceiving consumers about the origin or make of a product, which confusion ordinarily does not exist when a genuine article bearing a true mark is sold.'" *Id*. (quoting *NEC Elecs. v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987)).

The key determination in deciding whether the trademark first sale doctrine applies is whether the goods in question are "materially different" from when they were first sold. "The first sale doctrine does not apply … when an alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner." *SoftMan*, 171 F.Supp.2d at 1092. In this context, a "material difference is one that consumers consider, on average, relevant to a decision about whether to purchase a product." *Id*.

6

A careful reading of Slep-Tone's complaint reveals that the *content* of the karaoke tracks forming the basis of the present dispute was indeed created by Slep-Tone. The complaint muddies the water on this point by alleging that the specific computer files on Defendants' computer hard drives were "created" by Defendants or a third party (Complaint ¶ 43), and that the party who created those files is the "origin" of those files (Complaint ¶ 46). However, other of Slep-Tone's allegations show these labels to be misleading, if not flatly incorrect. Slep-Tone goes to some length to describe how modern computers can create "media-shifted copies" of its compact disc-based karaoke tracks by simply transferring the digital content in those tracks to the computer's hard drive. *See* Complaint ¶¶ 12-17. Later, Slep-Tone alleges that this is precisely what happened with the presently disputed karaoke files: "Many of the files stored on America's Bar's computer hard drives are representative of karaoke tracks originally created by Slep-Tone ...." Complaint ¶ 47. In other words, the content on the karaoke files forming the basis for Slep-Tone's trademark infringement and unfair competition claims was created and originally sold by Slep-Tone itself.

As demonstrated by Slep-Tone's own allegations in the present complaint, the files Defendants are accused of using and displaying are materially identical, in the eyes of the relevant consumers, to the karaoke tracks Slep-Tone has distributed. To be clear, Slep-Tone has not alleged that Defendants are selling or otherwise distributing physical or digital copies of the karaoke tracks to anyone. Instead, the entire harm alleged in Slep-Tone's trademark infringement and unfair competition claims stems from Defendants' *use* of certain karaoke tracks by *playing* them for customers at the America's Bar location at 2308 West Higgins Road. *See* Complaint ¶¶ 40, 66, 70-72. For purposes of applying the trademark first sale doctrine, then, the

"purchase" this Court must analyze is a bar patron's experience in seeing, hearing, and perhaps singing along to a karaoke video file within the bar's premises.

The substance or content of the "media shifted" karaoke files alleged to have been observed by America's Bar patrons was not materially different from the content originally sold and distributed on Slep-Tone's compact discs. Slep-Tone's complaint contains no allegation, or even suggestion, that bar patrons would notice any perceptible difference between a karaoke track played from a Slep-Tone compact disc and one played from a media-shifted hard drive file. In fact, Slep-Tone's allegations suggest that the opposite is true. Slep-Tone states that it openly and publically permits purchasers of its compact discs to use media-shifted versions of its karaoke files as long as the purchaser follows an alleged media-shifting policy. Complaint ¶ 23. The terms of this policy have nothing to do with the quality of the media-shifted computer files or the user experience of those files, but rather are simply an attempt to contractually tie each media-shifted file to a physical compact disc that Slep-Tone has sold. Complaint ¶ 24. Therefore, Slep-Tone itself recognizes that media-shifted copies of its karaoke tracks provide essentially the same user experience as the disc-based files, such that it need not make any rules to insure the quality of that user experience when media-shifted files are played.

To the bar patrons who are the ultimate consumers of karaoke tracks, there is no discernable difference between seeing Defendants' disputed media-shifted karaoke tracks and the compact disc-based tracks manufactured by Slep-Tone in the first place. As a result, there can be no differences between those types of tracks which are material enough to such consumers to affect whether they "purchase" (meaning continue to view) them. For all practical purposes, the content on the accused karaoke files is identical to that on Slep-Tone's originally sold compact discs. As a result, the trademark first sale doctrine prevents Slep-Tone from maintaining the

trademark infringement and unfair competition claims it now asserts.  These claims, and indeed Slep-Tone's entire complaint, must be dismissed.

## Conclusion

Slep-Tone's complaint makes no copyright infringement claims, and instead limits itself to attempting to make one trademark infringement claim and one unfair competition claim.  Both of these claims fail, because they would improperly create a mutant or perpetual copyright, and because they are barred by the trademark first sale doctrine.  Slep-Tone's entire complaint must be dismissed.

Respectfully submitted,

AMERICA'S BAR & GRILL, LLC and
RICHARD GARCIA

Date:   May 1, 2014                    By:___s/  Mark R. Bagley_____
                                            Mark R. Bagley
                                            TOLPIN & PARTNERS, PC
                                            100 North LaSalle Street, Suite 510
                                            Chicago, Illinois 60602
                                            (312) 698-8971

                                            Attorney for Defendants
                                            AMERICA'S BAR & GRILL, LLC
                                            and RICHARD GARCIA

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** was served via the Northern District of Illinois electronic filing system to:

> Vivek Jayaram
> JAYARAM LAW GROUP, LTD.
> 33 N. LaSalle Street, Suite 2900
> Chicago, Illinois 60602

on this 1st day of May, 2014.


_____s/  Mark R. Bagley_____
Mark R. Bagley