UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Slep-Tone Entertainment Corporation,<br><br>   Plaintiff,<br><br>   v.<br><br>America's Bar & Grill, LLC and Richard Garcia,<br><br>   Defendants. | No. 13 C 8526<br>Judge James B. Zagel |

**MEMORANDUM OPINION AND ORDER**

  Plaintiff Slep-Tone Entertainment Corporation ("Plaintiff") filed a complaint against Defendants America's Bar & Grill, LLC and Richard Garcia ("Defendants") under §§ 32 and 43 of the Lanham (Trademark) Act, 15 U.S.C. §§ 1114 and 1125. Defendants now move to dismiss both claims of the complaint under Fed. R. Civ. P. 12(b)(6).

**I. BACKGROUND**

  Plaintiff Slep-Tone is a manufacturer and distributor of karaoke accompaniment tracks sold under the trademark "SOUND CHOICE." Plaintiff owns U.S. Trademark Registration Nos. 1,923,448 and 4,099,045 for the trademark "SOUND CHOICE" and U.S. Trademark Registration Nos. 2,000,725 and 4,099,052 for the Sound Choice display mark (together, the "Sound Choice marks"). The Sound Choice marks are indicators that a karaoke accompaniment track originates from Slep-Tone. Plaintiff also owns and exclusively uses its distinctive and protectable trade dress, which includes (a) the use of a particular typeface, style, and visual arrangement in displaying lyrics; (b) the Sound Choice marks; and (c) the use of particular styles in displaying entry cues for singers, namely a series of vanishing rectangles to

1

indicate the cue. These individual and collected elements of the trade dress, functioning as a visual trademark, have acquired secondary meaning as an indicator of Slep-Tone.

Originally, Plaintiff released compact discs containing karaoke tracks encoded in a special format known as "CD+G" ("compact disc [audio] plus graphics") that allow for synchronized playback of audio and video suitable for prompting singers with lyrics cues. Computer technology is now widely available that allows the karaoke tracks stored on compact discs in CD+G format to be decoded and "ripped" (copied) to a computer hard drive. These "media-shifted copies," copies of karaoke tracks stored on media other than the original compact discs, are frequently shifted to another format (such as MP3+G or WAV+G) and stored on a hard drive. To prevent unauthorized copying of original karaoke tracks, Plaintiffs have established a media-shifting policy ("MSP") that imposes mandatory rules on karaoke operators using media-shifting copies.

Defendant America's Bar & Grill, owned by Defendant Richard Garcia and located in Hoffman Estates, Illinois, provides karaoke services through karaoke accompaniment tracks. Defendants store the karaoke accompaniment tracks on two computer hard drives, containing content that is substantially identical. Plaintiff contends that Defendants use "counterfeit" tracks, that they created, directed another to create, or otherwise acquired from a third party. Plaintiff contends that these "counterfeit" tracks display the Sound Choice marks and the trade dress without authorization. Plaintiff further alleges that these computer files are likely to confuse users into believing that Slep-Tone created the tracks, presenting a false designation of the origin of the karaoke tracks.

Plaintiff filed a two-count complaint against Defendants, alleging trademark and trade dress infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114 and

1125(a). In support of its infringement claim, Plaintiff alleges that Defendants manufactured or acquired the reproduction, copy, or counterfeit of the Sound Choice marks and trade dress and displayed the marks and trade dress during the provision of commercial karaoke services for its financial benefit. Plaintiffs allege that Defendants' display of Sound Choice marks is likely to cause confusion or mistake, or to deceive their customers into believing that their services are being provided with the authorization of Slep-Tone and are bona fide Sound Choice accompaniment tracks. Plaintiff further alleges that by using these copied tracks, rather than bona fide original discs, Defendants have been able to obtain and provide karaoke services at a lower cost than persons who acquire those materials legitimately and, consequently, have denied Slep-Tone revenue.

## II. LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim, the court treats all well-pleaded allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009). A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court need not accept as true any legal conclusion in a complaint, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678-79. A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*.

### III. DISCUSSION

A.   *Trademark Infringement and Unfair Competition Claims*

Plaintiff alleges that Defendants' use of unauthorized, media-shifted Slep-Tone tracks bearing the Sound Choice mark constitutes trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114, 1125. To survive dismissal of a claim for trademark or trade dress infringement under the Lanham Act, a plaintiff must allege: (a) that the marks are protectable; (b) that the defendant used the marks in commerce; and (c) that the defendants' use of the marks is likely to cause confusion. *Segal v. Geisha NYC LLC*, 517 F.3d 501, 506 (7th Cir. 2008); *Ty, Inc. v. Jones Grp.*, 237 F.3d 891, 897 (7th Cir.2001). As a general rule, the same facts which would support an action for trademark infringement under § 32(1) would also support an action for unfair competition under § 43(a) of the Lanham Act. *7-Eleven, Inc. v. Spear*, No. 10 C 6697, 2011 WL 830069, at *5 n.3 (N.D. Ill. Mar. 3, 2011) (quoting *Boston Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975) (brackets in original); *see also James Burrough, Ltd. v Sign of Beefeater, Inc.*, 540 F.2d 266, 274 n.16 (7th Cir. 1976).

Plaintiff alleges that it has registered U.S Trademarks over the Sound Choice marks and that Defendants have been using and displaying these marks, without authorization, in rendering commercial karaoke services. Plaintiff alleges that the Defendant allegedly acquired or made unauthorized media-shifted copies of Plaintiff's karaoke accompaniment tracks. Plaintiff alleges that Defendants are, thus, originators of a new media-shifted product that is not Plaintiff's product, but that displays Plaintiff's trademark and trade dress. Plaintiff also alleges that Defendants' use and display of the Sound Choice marks or trade dress, or both, is likely to cause

confusion, mistake, or deceive the Defendants' customers and patrons into believing that Defendants' services are being provided with the authorization of the Plaintiff and that Defendants' music libraries contain bona fide Sound Choice accompaniment tracks. Likewise, Plaintiff has alleged that Defendants have been able to provide services at a cost lower than providers who acquire tracks legitimately, resulting in harm to Plaintiff and Plaintiff's legitimate customers. Construing all inferences in Plaintiff's favor, as is required on a motion to dismiss, these allegations, taken in context with the other allegations in Plaintiff's Complaint, plausibly state a claim for trademark infringement and unfair competition.

Defendants do not dispute that Plaintiff has sufficiently alleged the elements of its infringement and unfair competition claims under the Lanham Act, but move to dismiss both claims under Fed. R. Civ. P. 12(b)(6) on the grounds that they are entitled to use Plaintiff's trademark for two reasons. First, Defendants argue that allowing Plaintiff's trademark and trade dress claims to proceed would impermissibly create an expansive, "mutant" copyright protection. Second, Defendants argue that resale of media-shifted karaoke tracks that are "materially identical" to the original Slep-Tone discs is permitted under the first sale doctrine.

B.  *"Mutant" Copyright Protection under the Lanham Act*

First, Defendants argue that Plaintiff's marks and trade dress are inherent, indivisible parts of its copyrightable karaoke tracks and that allowing Plaintiff's infringement and unfair competition claims would improperly create a "species of mutant copyright law." Plaintiff contends, however, that the trademarks and the particular manner in which the lyrics and cues are displayed are entirely separable from the copyrighted content.

In *Dastar Corp. v. Twentieth Century Fox Film Corp.*, the Supreme Court cautioned against the overextension of trademark and related protections into areas traditionally occupied

by patent or copyright law when it set forth a narrow reading of "origin of goods" in § 43(a) that "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." 539 U.S. 23, 37, 123 S.Ct. 2041, 2050 (U.S. 2003). The court in *Zuffa, LLC v. Justin.tv, Inc.* applied *Dastar* and refused to extend trademark protection where a trademark was inherent to uncopyrighted content.

In *Zuffa*, the plaintiff was an organizer of mixed martial arts bouts broadcast on pay-per-view television that brought copyright and trademark infringement claims against an operator of a website through which users could upload and share video streams. The plaintiff based its trademark infringement claims on defendant's display of certain trademarks, including the eight-sided ring where championship bouts took place, when the video was streamed from defendant's site. The court reasoned that extending protection over certain trademarks inherent to the video, such as the trademarked ring, would prevent the video from ever being displayed, even after the video had entered the public domain. Consequently, the court declined to create what would amount to a "perpetual copyright" over all re-showings of the video. However, the court, interpreting plaintiff's allegations in the light most favorable to the plaintiff, did not dismiss plaintiff's trademark claims in its entirety. Rather, the court limited plaintiff's trademark claims to the display of trademarks which were not an inherent part of the video broadcast.

Defendants argue that the protected material, here, is similarly inextricably intertwined with the content. Plaintiff, however, argues that unlike *Zuffa*, where it was genuinely impossible to display the copyrightable material without the trademark, Plaintiff's trademarks are entirely separable from the copyrighted material. At this stage of the proceedings and without further discovery regarding the product, Plaintiff's claim will not be dismissed as it has adequately alleged facts to state a plausible claim to relief.

C.  *First Trade Doctrine*

Defendants argue that its use and display of media-shifted karaoke tracks, which it claims were not materially different from the content originally sold and distributed on Slep-Tone's discs, is protected by the trademark first sale doctrine. Plaintiff, however, contends that the media-shifted tracks are "counterfeit" products to which the first sale doctrine does not apply.

The first sale doctrine provides an exception to trademark law, as a general rule, for the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner. *Standard Process, Inc. v. Banks*, 554 F.Supp.2d 866, 869 (E.D. Wis. 2008); *See Sebastian Int'l, Inc. v. Longs Drug Stores Corp.,* 53 F.3d 1073, 1074 (9th Cir. 1995); Restatement (Third) of Unfair Competition, § 24 cmt.b (2008). This doctrine limits a producer's control over the distribution of its trademarked product to the first sale of the product once the producer has permitted goods to enter commerce. *Id*. The first sale doctrine does not, however, apply to trademarked goods that are materially different than those sold by the trademark owner, and a reseller's conduct that goes beyond the mere resale of trademarked goods may support a cause of action for infringement or unfair competition. *Sebastian Int'l.*, 53 F.3d at 1076; *SoftMan Products Co. v. Adobe Systems*, 171 F.Supp.2d 1075 1092 (C.D. Cal. 2001).

Defendants, relying on *SoftMan Products*, argue that the media-shifted karaoke tracks they used and displayed are materially identical in the eyes of the relevant consumer to the original tracks distributed by Slep-Tone, and so are protected under the first trade doctrine. In *SoftMan Products*, the court found that selling software without access to customer support and technical services was a difference that an average consumer would find relevant to a decision about whether to purchase the product. 171 F.Supp.2d at 1092.

Defendants argue that the Court must similarly analyze what a customer, on average, would find relevant to making a decision about purchasing media-shifted tracks, rather than original tracks. Defendants argue that there is no discernable difference in the bar patron's experience in seeing, hearing, and perhaps singing along to a media-shifted karaoke track within the bar's premises. Defendants, however, overlook one crucial difference: the parties in *Softman Products* agreed that the software distributed by the plaintiff was identical to lawful copies of the original products, whereas Plaintiff contends that the media-shifted track is an unlawful "counterfeit" copy. There is nothing to support Defendants' reading of *SoftMan Products* to allow a broad expansion of the limited first sale doctrine to include copied, unoriginal items merely because they may "pass" for the original item. As Plaintiff alleges that Defendants' conduct goes beyond the mere resale of trademarked goods, it is not protected by the first sale doctrine and supports a claim for trademark infringement and unfair competition.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is denied in its entirety.

ENTER:

James B. Zagel
United States District Judge

DATE: August 15, 2014